DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment entry of divorce of the Lucas County Court of Common Pleas, Domestic Relations Division, wherein the trial court held that appellee, David Hanna, was entitled to $563,480.68 of his separate pre-marital property held in an investment account by Continental Capital Securities, Inc. Appellant, Susan Hanna, timely appealed the judgment of the trial court and raises the following sole assignment of error:
 {¶ 2} "The trial court's decision that appellee traced $563,480.68 of the Continental Capital account to his separate property is against the manifest weight of the evidence."
 {¶ 3} A trial court has broad discretion in dividing property in a divorce proceeding; however, "`[a] reviewing court may modify or reverse a property division, if it finds that the trial court abused its discretion in dividing the property as it did.'" Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 218, citing Cherry v. Cherry (1981),66 Ohio St.2d 348, 355. "`The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. [Citations omitted.]'" Id. at 219, citing State v. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 4} According to R.C. 3105.171(B), in divorce proceedings, the trial court must determine what property constitutes marital property and what constitutes separate property, and then divide the property equitably between the spouses, in accordance with R.C. 3105.171. Pertinent to this case, in R.C. 3105.171(A), marital property and separate property are defined as follows:
 {¶ 5} "* * * (3)(a) "Marital property" means, subject to division (A)(3)(b) of this section, all of the following:
 {¶ 6} "(i) All real and personal property that currently is owned by either or both of the spouses * * * that was acquired by either or both of the spouses during the marriage;
 {¶ 7} "(ii) All interest that either or both of the spouses currently has in any real or personal property * * * that was acquired by either or both of the spouses during the marriage;
 {¶ 8} "(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage; * * *
 {¶ 9} "(b) "Marital property" does not include any separate property.
 {¶ 10} "(4) "Passive income" means income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse.
 {¶ 11} "(5) "Personal property" includes both tangible and intangible personal property.
 {¶ 12} "(6)(a) "Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
 {¶ 13} "(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;
 {¶ 14} "(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;
 {¶ 15} "(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage; * * *
 {¶ 16} "(vi) Compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets; * * *
 {¶ 17} "(b) The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable. * * *"
 {¶ 18} "[T]raceability has become the focus when determining whether separate property has lost its separate character after being commingled with marital property." Peck v. Peck (1994), 96 Ohio App.3d 731,734. "The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." Id.
 {¶ 19} In this case, the parties were married on July 29, 1995. Prior to the marriage, appellee had an investment account with Smith Barney. At the time of the marriage, the various stocks in appellee's investment account were valued at $489,470. In addition to this amount, appellee deposited a personal injury settlement check, totaling $60,000, into the investment account in March 1996. Also in 1996, appellee made a net profit on the sale of pre-marital stock totaling $14,010.68. In addition to the above pre-marital contributions, $74,123 was deposited to the Smith Barney account in 1996.
 {¶ 20} There was differing testimony from the parties concerning the origin of the $74,123. Appellee testified that the money was his separate property which he acquired prior to marriage and had been holding in cash in his safety deposit box. Appellant, on the other hand, testified that it was winnings from Las Vegas acquired during the marriage. The trial court never made a finding regarding these specific deposits. However, insofar as the trial court did not award this additional $74,123 to appellee as his separate property, we find that the trial court must have concluded that the $74,123 was marital funds.
 {¶ 21} The balance in the Smith Barney account fluctuated greatly during the marriage, reaching a low of $237,981.20 in July 1996. Through active stock sales and purchases, the balance in the Smith Barney account was eventually brought up to $1,169.956.27, in May 1997, when appellee closed the account with Smith Barney and transferred the $1,169.956.27 into the Continental Capital Securities account.
 {¶ 22} While the funds were with Continental, approximately $58,000 was deposited to the account and $290,000 was withdrawn. Additionally, appellee continued to actively monitor the account, making numerous purchases and sales of stock. During the pendency of the divorce, the stocks in the Continental account were ordered sold by the trial court. At the time of the trial, the account had in it $659,887.75. This was the balance remaining after the trial court ordered disbursements to appellant in the amount of $45,000, and to the federal government in the total amount of $211,561.17, to pay the past taxes on the capital gain from this account.
 {¶ 23} The trial court held that appellee established that he had $563,480.68 of separate property, which was comprised of $489,470 he had in the account prior to the marriage; $60,000 from a personal injury settlement, which is separate property pursuant to R.C. 3105.171(A)(6)(a) (vi); and $14,010.68 in net gain on the sale of stock that appellee held prior to the marriage. However, due to appellee's active monitoring and management of the Continental account, the trial court held that the appreciation on the Continental account was marital property which needed to be divided between the parties.
 {¶ 24} The trial court divided the marital account in the following manner. From the $916,448.92 in the Continental account after the sale of the stocks, the trial court deducted $563,480.68, which it deemed to be the value of appellee's separate property in the account. Thus, the trial court held that $352,968.24 was the amount of appreciation in the account that had to be divided between the parties. From the $352,968.24, the trial court deducted $211,561.17, the amount of federal taxes paid on the capital gains, and found that because the appreciation on the account was marital property, the federal tax obligation was also their joint responsibility. This left $141,407.07 to be divided between the parties. The trial court credited appellant with the $45,000 she had already received and awarded appellee the balance of $96,407.07, from which he was to pay $1,093.45 for the guardian ad litem, $13,265 to appellant for reimbursed medical expenses, a damaged bed, and attorney fees, and $10,000 to post a bond for child support. Appellee was also required to maintain $41,173.45 in his account, which represented the amount of his child support arrears.
 {¶ 25} Appellant argues that appellee failed to trace his separate property throughout the accounts and, therefore, is not entitled to $563,480.68. In support of her argument, appellant relies on the testimony of her expert, Douglas Austin, Ph.D. in economics and business and Certified Public Accountant. Dr. Austin testified that, in order to trace what amount of an initial contribution to a stock account still existed after numerous sales, purchases, withdrawals, and deposits had been made to the account, it was necessary to "start with the very first transaction and go transaction by transaction" for the entire period of time "to see exactly what the ending dollars actually arose from * * *."
 {¶ 26} Also in support of her argument, appellant points this court to Bryant v. Bryant (Jan. 28, 1999), Coshocton App. No. 97CA8, 98CA1. In Bryant, the parties' investment and retirement accounts were very active, had numerous withdrawals and deposits and, in certain accounts, "the amounts fluctuated below the pre-marital level, and then were brought back up by indisputably marital funds." Given the active nature of the accounts, the court held that "the funds in the accounts did not represent passive income and appreciation, but rather, were the result of the investment of marital funds and labor expended on those accounts during the marriage." Hence, although appellant had established the pre-marital value of the accounts, because appellant had failed to trace any of the assets in the accounts from the pre-marital status to the time of the divorce, the court held that appellant had failed to meet his burden of establishing what funds in the accounts still remained his separate property.
 {¶ 27} With respect to this case, we agree with the trial court that due to the labor involved with monitoring and managing the accounts, as well as, the monetary contributions of marital funds, "all income and appreciation on separate property * * * that occurred during the marriage" is marital income. See R.C. 3105.171(A)(3)(a)(iii). We, however, find that the trial court abused its discretion in awarding appellee $563,480.68 as his separate property.
 {¶ 28} As noted above, after the entire $563,480.68, representing appellee's separate pre-marital property, had been deposited into the Smith Barney account and after the parties had deposited $74,123 of marital funds, the value of the Smith Barney account dropped to $237,981.20 in July 1996. The value of the Smith Barney and Continental accounts were eventually brought back up with marital funds, to wit, income and appreciation on the accounts through appellee's labor, in monitoring and managing the account, and through contributions of marital funds. Nevertheless, in July 1996, from the point at which the value of the Smith Barney account dropped below the amount of appellee's pre-marital contributions, appellee was no longer entitled to the full $563,480.68, as some portion of this amount already had been lost by him while playing the stock market.
 {¶ 29} Appellee had the burden of proof to establish by a preponderance of the evidence what amount of the Continental account remained his separate property. Clearly, at the point the Smith Barney account dropped below $563,480.68, appellee could no longer trace the full amount of the $563,480.68 as his separate property. Accordingly, we find that the decision of the trial court was against the manifest weight of the evidence. Appellant's sole assignment of error is therefore found well-taken.
 {¶ 30} On consideration whereof, the court finds substantial justice has not been done the party complaining and the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is reversed to the extent discussed in this decision. This matter is remanded to the trial court for further proceedings consistent with this decision. Appellee is ordered to pay the court costs of this appeal.
JUDGMENT REVERSED.
Peter M. Handwork, P.J., Richard W. Knepper, J., and George M.Glasser, J., CONCUR.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.